**133 Nev., Advance Opinion 102**

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| FRANCHISE TAX BOARD OF THE STATE OF CALIFORNIA, Appellant/Cross-Respondent, vs. GILBERT P. HYATT, Respondent/Cross-Appellant. | No. 53264 |

**FILED**

DEC 26 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

Appeal and cross-appeal from a district court judgment on a jury verdict in a tort action and from a post-judgment order awarding costs. Eighth Judicial District Court, Clark County; Jessie Elizabeth Walsh, Judge.

*Affirmed in part, reversed in part, and remanded with instructions.*

McDonald Carano Wilson LLP and Pat Lundvall, Debbie Leonard, Rory T. Kay, Carla Higginbotham, and Megan L. Starich, Reno; Lemons, Grundy & Eisenberg and Robert L. Eisenberg, Reno,
for Appellant/Cross-Respondent.

Hutchison & Steffen, LLC, and Mark A. Hutchison and Michael K. Wall, Las Vegas; Kaempfer Crowell and Peter C. Bernhard, Las Vegas; Lewis Roca Rothgerber Christie LLP and Daniel F. Polsenberg, Las Vegas; Perkins Coie LLP and Donald J. Kula, Los Angeles, California,
for Respondent/Cross-Appellant.

Adam Paul Laxalt, Attorney General, and Lawrence J. VanDyke, Solicitor General, Carson City,
for Amicus Curiae State of Nevada.

SUPREME COURT
OF
NEVADA

(O) 1947A

17-44422

Dustin McDaniel, Attorney General, Little Rock, Arkansas,
for Amicus Curiae State of Arkansas.

John V. Suthers, Attorney General, Denver, Colorado,
for Amicus Curiae State of Colorado.

Joseph R. "Beau" Biden III, Attorney General, and Richard S. Gebelein,
Chief Deputy Attorney General, Wilmington, Delaware,
for Amicus Curiae State of Delaware.

Bill McCollum, Attorney General, Tallahassee, Florida,
for Amicus Curiae State of Florida.

Lawrence G. Wasden, Attorney General, Boise, Idaho,
for Amicus Curiae State of Idaho.

Shone T. Pierre, Baton Rouge, Louisiana,
for Amici Curiae Louisiana Secretary and the Louisiana Department of
Revenue.

Janet T. Mills, Attorney General, Augusta, Maine,
for Amicus Curiae State of Maine.

Douglas F. Gansler, Attorney General, Baltimore, Maryland,
for Amicus Curiae State of Maryland.

Chris Koster, Attorney General, Jefferson City, Missouri,
for Amicus Curiae State of Missouri.

Anne Milgram, Attorney General, Trenton, New Jersey,
for Amicus Curiae State of New Jersey.

Donnita A. Wald, General Counsel, Bismarck, North Dakota,
for Amicus Curiae North Dakota State Tax Commissioner Cory Fong.

Richard Cordray, Attorney General, Columbus, Ohio,
for Amicus Curiae State of Ohio.

W.A. Drew Edmondson, Attorney General, Oklahoma City, Oklahoma,
for Amicus Curiae State of Oklahoma.

 

Robert E. Cooper, Jr., Attorney General and Reporter, Nashville, Tennessee,
for Amicus Curiae State of Tennessee.

John Swallow, Attorney General, and Clark L. Snelson, Assistant Attorney General, Salt Lake City, Utah,
for Amicus Curiae State of Utah.

William H. Sorrell, Attorney General, Montpelier, Vermont,
for Amicus Curiae State of Vermont.

William C. Mims, Attorney General, Richmond, Virginia,
for Amicus Curiae State of Virginia.

Robert M. McKenna, Attorney General, Olympia, Washington,
for Amicus Curiae State of Washington.

Shirley Sicilian, General Counsel, and Bruce J. Fort, Washington, D.C.,
for Amicus Curiae Multistate Tax Commission.

---

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, HARDESTY, J.:

This matter is before us on remand from the United States Supreme Court. We previously issued an opinion in this matter concluding, in part, that appellant Franchise Tax Board of the State of California (FTB) was not entitled to the statutory cap on damages a similarly situated Nevada agency would be entitled to under similar circumstances. *Franchise Tax Bd. of Cal. v. Hyatt* (2014 Opinion), 130 Nev., Adv. Op. 71, 335 P.3d 125, 131 (2014), *vacated*, ___ U.S. ___, 136 S. Ct. 1277 (2016). FTB petitioned the United States Supreme Court for

certiorari. *Franchise Tax Bd. of Cal. v. Hyatt (Hyatt II)*, ___ U.S. ___, ___, 136 S. Ct. 1277, 1280 (2016). The Court agreed to decide two questions. *Id.* The first question was whether to overrule *Nevada v. Hall*, 440 U.S. 410 (1979), and its holding, "that one State . . . can open the doors of its courts to a private citizen's lawsuit against another State . . . without the other State's consent." *Hyatt II*, ___ U.S. at ___, 136 S. Ct. at 1279-80. The Court split 4-4 on the *Hall* question and thus affirmed our "exercise of jurisdiction over California's state agency." *Id.* at ___, 136 S. Ct. at 1281.

The second question was "[w]hether the Constitution permits Nevada to award damages against California agencies under Nevada law that are greater than it could award against Nevada agencies in similar circumstances." *Id.* The Court held that it does not and that this court's "special rule of law" that FTB was not entitled to a damages cap that a Nevada agency would be entitled to "violates the Constitution's requirement that Full Faith and Credit shall be given in each State to the public Acts, Records and judicial Proceedings of every other State." *Id.* (internal quotation marks omitted). The Court thus granted FTB's certiorari petition, vacated our decision, and remanded the case back to us for further consideration in light of its decision. *Id.* at ___, 136 S. Ct. at 1283. In light of the Court's ruling, we reissue our vacated opinion except as to the damages portions addressed by the Supreme Court and apply the statutory damages caps FTB is entitled to under *Hyatt II*.[1]

---

[1]We previously issued an opinion on September 14, 2017, but withdrew that opinion on rehearing to correct an error regarding the availability of prejudgment interest under the statutory damages cap.

In 1998, inventor Gilbert P. Hyatt sued FTB seeking damages for intentional torts and bad-faith conduct committed by FTB auditors during tax audits of Hyatt's 1991 and 1992 state tax returns. After years of litigation, a jury awarded Hyatt $139 million in damages on his tort claims and $250 million in punitive damages. In this appeal, we must determine, among other issues, whether we should revisit our exception to government immunity for intentional torts and bad-faith conduct as a result of this court's adoption of the federal test for discretionary-function immunity, which shields a government entity or its employees from suit for discretionary acts that involve an element of individual judgment or choice and that are grounded in public policy considerations. We hold that our exception to immunity for intentional torts and bad-faith conduct survives our adoption of the federal discretionary-function immunity test because intentional torts and bad-faith conduct are not based on public policy.

Because FTB cannot invoke discretionary-function immunity to protect itself from Hyatt's intentional tort and bad-faith causes of action, we must determine whether Hyatt's claims for invasion of privacy, breach of confidential relationship, abuse of process, fraud and intentional infliction of emotional distress survive as a matter of law, and if so, whether they are supported by substantial evidence. All of Hyatt's causes of action, except for his fraud and intentional infliction of emotion distress claims, fail as a matter of law, and thus, the judgment in his favor on these claims is reversed.

As to the fraud cause of action, sufficient evidence exists to support the jury's findings that FTB made false representations to Hyatt regarding the audits' processes and that Hyatt relied on those

representations to his detriment and damages resulted. In regard to Hyatt's claim for intentional infliction of emotional distress, we conclude that medical records are not mandatory in order to establish a claim for intentional infliction of emotional distress if the acts of the defendant are sufficiently severe. As a result, substantial evidence supports the jury's findings as to liability and an award of damages up to the amount of Nevada's statutory cap.

In connection with these causes of action, and in light of the Supreme Court's opinion in *Hyatt II*, we must address FTB's entitlement to the statutory cap on the amount of damages that Hyatt may recover from FTB on the fraud and intentional infliction of emotional distress claims under comity. We conclude that, in accordance with *Hyatt II*, FTB is entitled to the $50,000 statutory cap on damages a similarly situated Nevada agency would be entitled to in similar circumstances. *See* NRS 41.035(1) (1987).[2] We therefore reverse the $85 million of damages awarded to Hyatt on the fraud claim and the $1,085,281.56 of special damages awarded to Hyatt on the intentional infliction of emotional distress claim and conclude that FTB is entitled to the $50,000 statutory cap on Hyatt's fraud claim and intentional infliction of emotional distress claim.

We also take this opportunity to address as a matter of first impression whether, based on comity, it is reasonable to provide FTB with

---

[2]The version of the statute in effect at the time Hyatt incurred his damages provided a statutory cap on damages awarded in a tort action against a state agency "not [to] exceed the sum of $50,000." *See* NRS 41.035(1) (1987).

SUPREME COURT
OF
NEVADA

(O) 1947A

6

the same protection of California law, to the extent that it does not conflict with Nevada law, to grant FTB immunity from punitive damages. Because punitive damages would not be available against a Nevada government entity, we hold, under comity principles, that FTB is immune from punitive damages. Thus, we reverse that portion of the district court's judgment awarding Hyatt punitive damages.

For the reasons discussed below, we affirm in part, reverse in part, and remand this case to the district court with instructions.

## FACTS AND PROCEDURAL HISTORY

### California proceedings

In 1993, after reading a newspaper article regarding respondent/cross-appellant Hyatt's lucrative computer-chip patent and the large sums of money that Hyatt was making from the patent, a tax auditor for appellant/cross-respondent FTB decided to review Hyatt's 1991 state income tax return. The return revealed that Hyatt did not report, as taxable income, the money that he had earned from the patent's licensing payments and that he had only reported 3.5 percent of his total taxable income for 1991. Hyatt's tax return showed that he had lived in California for nine months in 1991 before relocating to Las Vegas, Nevada, but Hyatt claimed no moving expenses on his 1991 tax return. Based on these discrepancies, FTB opened an audit on Hyatt's 1991 state income tax return.

The 1991 audit began when Hyatt was sent notice that he was being audited. This notification included an information request form that required Hyatt to provide certain information concerning his connections to California and Nevada and the facts surrounding his move to Nevada. A portion of the information request form contained a privacy notice, which stated in relevant part that "The Information Practices Act of 1977

SUPREME COURT
OF
NEVADA

(O) 1947A

and the federal Privacy Act require the Franchise Tax Board to tell you why we ask you for information. The Operations and Compliance Divisions ask for tax return information to carry out the Personal Income Tax Law of the State of California." Also included with the notification was a document containing a list of what the taxpayer could expect from FTB: "Courteous treatment by FTB employees[,] Clear and concise requests for information from the auditor assigned to your case[,] Confidential treatment of any personal and financial information that you provide to us[,] Completion of the audit within a reasonable amount of time[.]"

The audit involved written communications and interviews. FTB sent over 100 letters and demands for information to third parties including banks, utility companies, newspapers (to learn if Hyatt had subscriptions), medical providers, Hyatt's attorneys, two Japanese companies that held licenses to Hyatt's patent (inquiring about payments to Hyatt), and other individuals and entities that Hyatt had identified as contacts. Many, but not all, of the letters and demands for information contained Hyatt's social security number or home address or both. FTB also requested information and documents directly from Hyatt. Interviews were conducted and signed statements were obtained from three of Hyatt's relatives—his ex-wife, his brother, and his daughter—all of whom were estranged from Hyatt during the relevant period in question, except for a short time when Hyatt and his daughter attempted to reconcile their relationship. No relatives with whom Hyatt had good relations, including his son, were ever interviewed even though Hyatt had identified them as contacts. FTB sent auditors to Hyatt's neighborhood in California and to various locations in Las Vegas in search of information.

Upon completion of the 1991 audit, FTB concluded that Hyatt did not move from California to Las Vegas in September 1991, as he had stated, but rather, that Hyatt had moved in April 1992. FTB further concluded that Hyatt had staged the earlier move to Nevada by renting an apartment, obtaining a driver's license, insurance, bank account, and registering to vote, all in an effort to avoid state income tax liability on his patent licensing. FTB further determined that the sale of Hyatt's California home to his work assistant was a sham. A detailed explanation of what factors FTB considered in reaching its conclusions was provided, which in addition to the above, included comparing contacts between Nevada and California, banking activity in the two states, evidence of Hyatt's location in the two states during the relevant period, and professionals whom he employed in the two states. Based on these findings, FTB determined that Hyatt owed the state of California approximately $1.8 million in additional state income taxes and that penalties against Hyatt in the amount of $1.4 million were warranted. These amounts, coupled with $1.2 million in interest, resulted in a total assessment of $4.5 million.

The 1991 audit's finding that Hyatt did not move to Las Vegas until April 1992 prompted FTB to commence a second audit of Hyatt's 1992 California state taxes. Because he maintained that he lived in Nevada that tax year, Hyatt did not file a California tax return for 1992, and he opposed the audit. Relying in large part on the 1991 audit's findings and a single request for information sent to Hyatt regarding patent-licensing payments received in 1992, FTB found that Hyatt owed the state of California over $6 million in taxes and interest for 1992.

Supreme Court
of
Nevada

(O) 1947A

Moreover, penalties similar to those imposed by the 1991 audit were later assessed.

Hyatt formally challenged the audits' conclusions by filing two protests with FTB that were handled concurrently. Under a protest, an audit is reviewed by FTB for accuracy, or the need for any changes, or both. The protests lasted over 11 years and involved 3 different FTB auditors. In the end, the protests upheld the audits, and Hyatt went on to challenge them in the California courts.[3]

*Nevada litigation*

During the protests, Hyatt filed the underlying Nevada lawsuit in January 1998. His complaint included a claim for declaratory relief concerning the timing of his move from California to Nevada and a claim for negligence. The complaint also identified seven intentional tort causes of action allegedly committed by FTB during the 1991 and 1992 audits: invasion of privacy—intrusion upon seclusion, invasion of privacy—publicity of private facts, invasion of privacy—false light, intentional infliction of emotional distress, fraud, breach of confidential relationship, and abuse of process. Hyatt's lawsuit was grounded on his allegations that FTB conducted unfair audits that amounted to FTB "seeking to trump up a tax claim against him or attempt[ing] to extort him," that FTB's audits were "goal-oriented," that the audits were conducted to improve FTB's tax assessment numbers, and that the penalties FTB imposed against Hyatt were intended "to better bargain for and position the case to settle."

---

[3]At the time of this appeal, Hyatt was still challenging the audits' conclusions in California courts.

 

Early in the litigation, FTB filed a motion for partial summary judgment challenging the Nevada district court's jurisdiction over Hyatt's declaratory relief cause of action. The district court agreed on the basis that the timing of Hyatt's move from California to Nevada and whether FTB properly assessed taxes and penalties against Hyatt should be resolved in the ongoing California administrative process. Accordingly, the district court granted FTB partial summary judgment.[4] As a result of the district court's ruling, the parties were required to litigate the action under the restraint that any determinations as to the audits' accuracy were not part of Hyatt's tort action and the jury would not make any findings as to when Hyatt moved to Nevada or whether the audits' conclusions were correct.

FTB also moved the district court for partial summary judgment to preclude Hyatt from seeking recovery for alleged economic damages. As part of its audit investigation, FTB sent letters to two Japanese companies that had licensing agreements with Hyatt requesting payment information between Hyatt and the companies. Included with the letters were copies of the licensing agreements between Hyatt and the Japanese companies. Hyatt asserted that those documents were confidential and that when FTB sent the documents to the companies, the companies were made aware that Hyatt was under investigation. Based on this disclosure, Hyatt theorized that the companies would have then notified the Japanese government, who would in turn notify other Japanese businesses that Hyatt was under investigation. Hyatt claimed

---

[4]That ruling was not challenged in this court, and consequently, it is not part of this appeal.

Supreme Court
of
Nevada

(O) 1947A

11

that this ultimately ended Hyatt's patent-licensing business in Japan. Hyatt's evidence in support of these allegations included the fact that FTB sent the letters, that the two businesses sent responses, that Hyatt had no patent-licensing income after this occurred, and expert testimony that this chain of events would likely have occurred in the Japanese business culture. FTB argued that Hyatt's evidence was speculative and insufficient to adequately support his claim. Hyatt argued that he had sufficient circumstantial evidence to present the issue to the jury. The district court granted FTB's motion for partial summary judgment, concluding that Hyatt had offered no admissible evidence to support that the theorized chain of events actually occurred and, as a result, his evidence was too speculative to overcome the summary judgment motion.

One other relevant proceeding that bears discussion in this appeal concerns two original writ petitions filed by FTB in this court in 2000. In those petitions, FTB sought immunity from the entire underlying Nevada lawsuit, arguing that it was entitled to the complete immunity that it enjoyed under California law based on either sovereign immunity, the full faith and credit clause, or comity. This court resolved the petitions together in an unpublished order in which we concluded that FTB was not entitled to full immunity under any of these principles. But we did determine that, under comity, FTB should be granted partial immunity equal to the immunity a Nevada government agency would receive. In light of that ruling, this court held that FTB was immune from Hyatt's negligence cause of action, but not from his intentional tort causes of action. The court concluded that while Nevada provided immunity for discretionary decisions made by government agencies, such immunity did

 

not apply to intentional torts or bad-faith conduct because to allow it to do so would "contravene Nevada's policies and interests in this case."

This court's ruling in the writ petitions was appealed to and upheld by the United States Supreme Court. *Franchise Tax Bd. of Cal. v. Hyatt*, 538 U.S. 488 (2003). In *Hyatt*, the Supreme Court focused on the issue of whether the Full Faith and Credit Clause of the federal constitution required Nevada to afford FTB the benefit of the full immunity that California provides FTB. *Id.* at 494. The Court upheld this court's determination that Nevada was not required to give FTB full immunity. *Id.* at 499. The Court further upheld this court's conclusion that FTB was entitled to partial immunity under comity principles, observing that this court "sensitively applied principles of comity with a healthy regard for California's sovereign status, relying on the contours of Nevada's own sovereign immunity from suit as a benchmark for its analysis." *Id.* The Supreme Court's ruling affirmed this court's limitation of Hyatt's case against FTB to the intentional tort causes of action.

Ultimately, Hyatt's case went to trial before a jury. The trial lasted approximately four months. The jury found in favor of Hyatt on all intentional tort causes of action and returned special verdicts awarding him damages in the amount of $85 million for emotional distress, $52 million for invasion of privacy, $1,085,281.56 as special damages for fraud, and $250 million in punitive damages. Hyatt was also awarded prejudgment interest on the awarded damages for emotional distress, invasion of privacy, and fraud. Following the trial, Hyatt moved the district court for costs. The district court assigned the motion to a special master who, after 15 months of discovery and further motion practice,

issued a recommendation that Hyatt be awarded approximately $2.5 million in costs. The district court adopted the master's recommendation.

FTB appeals from the district court's final judgment and the post-judgment award of costs. Hyatt cross-appeals, challenging the district court's partial summary judgment ruling that he could not seek, as part of his damages at trial, economic damages for the alleged destruction of his patent-licensing business in Japan.[5]

## DISCUSSION

We begin by addressing FTB's appeal, which raises numerous issues that it argues entitle it to either judgment as a matter of law in its favor or remand for a new trial. As a threshold matter, we address discretionary-function immunity and whether Hyatt's causes of action against FTB are barred by this immunity, or whether there is an exception to the immunity for intentional torts and bad-faith conduct. Deciding that FTB is not immune from suit, we then consider FTB's arguments as to each of Hyatt's intentional tort causes of action. We conclude our consideration of FTB's appeal by discussing Nevada's statutory caps on damages and immunity from punitive damages. As for Hyatt's cross-appeal, we close this opinion by considering his challenge to the district court's partial summary judgment in FTB's favor on Hyatt's damages claim for economic loss.

---

[5]This court granted permission for the Multistate Tax Commission and the state of Utah, which was joined by other states (Arkansas, Colorado, Delaware, Florida, Idaho, Louisiana, Maine, Maryland, Missouri, New Jersey, North Dakota, Ohio, Oklahoma, Tennessee, Vermont, Virginia, and Washington), to file amicus curiae briefs.

*FTB is not immune from suit under comity because discretionary-function immunity in Nevada does not protect Nevada's government or its employees from intentional torts and bad-faith conduct*

Like most states, Nevada has waived traditional sovereign immunity from tort liability, with some exceptions. NRS 41.031. The relevant exception at issue in this appeal is discretionary-function immunity, which provides that no action can be brought against the state or its employee "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the State . . . or of any . . . employee . . . , whether or not the discretion involved is abused." NRS 41.032(2). By adopting discretionary-function immunity, our Legislature has placed a limit on its waiver of sovereign immunity. Discretionary-function immunity is grounded in separation of powers concerns and is designed to preclude the judicial branch from "second-guessing," in a tort action, legislative and executive branch decisions that are based on "social, economic, and political policy." *Martinez v. Maruszczak*, 123 Nev. 433, 446, 168 P.3d 720, 729 (2007) (internal quotations omitted); *see also Bailey v. United States*, 623 F.3d 855, 860 (9th Cir. 2010). FTB initially argues on appeal that immunity protects it from Hyatt's intentional tort causes of action based on the application of discretionary-function immunity and comity as recognized in Nevada.

Comity is a legal principle whereby a forum state may give effect to the laws and judicial decisions of another state based in part on deference and respect for the other state, but only so long as the other state's laws are not contrary to the policies of the forum state. *Mianecki v. Second Judicial Dist. Court*, 99 Nev. 93, 98, 658 P.2d 422, 424-25 (1983); *see also Solomon v. Supreme Court of Fla.*, 816 A.2d 788, 790 (D.C. 2002);

*Schoeberlein v. Purdue Univ.*, 544 N.E.2d 283, 285 (Ill. 1989); *McDonnell v. Ill.*, 748 A.2d 1105, 1107 (N.J. 2000); *Sam v. Estate of Sam*, 134 P.3d 761, 764-66 (N.M. 2006); *Hansen v. Scott*, 687 N.W.2d 247, 250, 250 (N.D. 2004). The purpose behind comity is to "foster cooperation, promote harmony, and build good will" between states. *Hansen*, 687 N.W.2d at 250 (internal quotations omitted). But whether to invoke comity is within the forum state's discretion. *Mianecki*, 99 Nev. at 98, 658 P.2d at 425. Thus, when a lawsuit is filed against another state in Nevada, while Nevada is not required to extend immunity in its courts to the other state, Nevada will consider extending immunity under comity, so long as doing so does not violate Nevada's public policies. *Id.* at 98, 658 P.2d at 424-25. In California, FTB enjoys full immunity from tort actions arising in the context of an audit. Cal. Gov't Code § 860.2 (West 2012). FTB contends that it should receive the immunity protection provided by California statutes to the extent that such immunity does not violate Nevada's public policies under comity.

*Discretionary-function immunity in Nevada*

This court's treatment of discretionary-function immunity has changed over time. In the past, we applied different tests to determine whether to grant a government entity or its employee discretionary-function immunity. *See, e.g., Arnesano v. State ex rel. Dep't of Transp.*, 113 Nev. 815, 823-24, 942 P.2d 139, 144-45 (1997) (applying planning-versus-operational test to government action), *abrogated by Martinez*, 123 Nev. at 443-44, 168 P.3d at 726-27; *State v. Silva*, 86 Nev. 911, 913-14, 478 P.2d 591, 592-93 (1970) (applying discretionary-versus-ministerial test to government conduct), *abrogated by Martinez*, 123 Nev. at 443-44, 168 P.3d at 726-27. We also recognized an exception to discretionary-function immunity for intentional torts and bad-faith conduct. *Falline v. GNLV*

SUPREME COURT
OF
NEVADA

(O) 1947A

16

*Corp.*, 107 Nev. 1004, 1009 & n.3, 823 P.2d 888, 892 & n.3 (1991) (plurality opinion). More recently, we adopted the federal two-part test for determining the applicability of discretionary-function immunity. *Martinez*, 123 Nev. at 444-47, 168 P.3d at 727-29 (adopting test named after two United States Supreme Court decisions: *Berkovitz v. United States*, 486 U.S. 531 (1988), and *United States v. Gaubert*, 499 U.S. 315 (1991)). Under the *Berkovitz-Gaubert* two-part test, discretionary-function immunity will apply if the government actions at issue "(1) involve an element of individual judgment or choice and (2) [are] based on considerations of social, economic, or political policy." *Martinez*, 123 Nev. at 446-47, 168 P.3d at 729. When this court adopted the federal test in *Martinez*, we expressly dispensed with the earlier tests used by this court to determine whether to grant a government entity or its employee immunity, *id.* at 444, 168 P.3d at 727, but we did not address the *Falline* exception to immunity for intentional torts or bad-faith misconduct.

In the earlier writ petitions filed by FTB in this court, we relied on *Falline* to determine that FTB was entitled to immunity from Hyatt's negligence cause of action, but not the remaining intentional-tort-based causes of action. Because the law concerning the application of discretionary-function immunity has changed in Nevada since FTB's writ petitions were resolved, we revisit the application of discretionary-function immunity to FTB in the present case as it relates to Hyatt's intentional tort causes of action. *Hsu v. Cty. of Clark*, 123 Nev. 625, 632, 173 P.3d 724, 730 (2007) (stating that "the doctrine of the law of the case should not apply where, in the interval between two appeals of a case, there has been a change in the law by . . . a judicial ruling entitled to deference" (internal quotations omitted)).

FTB contends that when this court adopted the federal test in *Martinez*, it impliedly overruled the *Falline* exception to discretionary-function immunity for intentional torts and bad-faith misconduct. Hyatt maintains that the *Martinez* case did not alter the exception created in *Falline* and that discretionary immunity does not apply to bad-faith misconduct because an employee does not have discretion to undertake intentional torts or act in bad faith.

In *Falline*, 107 Nev. at 1009, 823 P.2d at 891-92, this court ruled that the discretionary-function immunity under NRS 41.032(2) did not apply to bad-faith misconduct. The case involved negligent processing of a worker's compensation claim. Falline injured his back at work and later required surgery. *Falline*, 107 Nev. at 1006, 823 P.2d at 890. Following the surgery, while rising from a seated position, Falline experienced severe lower-back pain. *Id.* at 1006-07, 823 P.2d at 890. Falline's doctor concluded that Falline's back pain was related to his work injury. *Id.* at 1007, 823 P.2d at 890. The self-insured employer, however, refused to provide worker's compensation benefits beyond those awarded for the work injury because it asserted that an intervening injury had occurred. *Id.* After exhausting his administrative remedies, it was determined that Falline was entitled to worker's compensation benefits for both injuries. *Id.* He was nevertheless denied benefits. *Id.* Falline brought suit against the employer for negligence and bad faith in the processing of his worker's compensation claims. *Id.* at 1006, 823 P.2d at 889-90. The district court dismissed his causes of action, and Falline appealed, arguing that dismissal was improper.

On appeal, after concluding that a self-insured employer should be treated the same as the State Industrial Insurance System, this

court concluded that Falline could maintain a lawsuit against the self-insured employer based on negligent handling of his claims. *Id.* at 1007-09, 823 P.2d at 890-92. In discussing its holding, the court addressed discretionary immunity and explained that "if failure or refusal to timely process or pay claims is attributable to bad faith, immunity does not apply whether an act is discretionary or not." *Id.* at 1009, 823 P.2d at 891. The court reasoned that the insurer did not have discretion to act in bad faith, and therefore, discretionary-function immunity did not apply to protect the insurer from suit. *Id.* at 1009, 823 P.2d at 891-92.

The *Falline* court expressly addressed NRS 41.032(2)'s language that there is immunity "whether or not the discretion involved is abused." *Falline*, 107 Nev. at 1009 n.3, 823 P.2d at 892 n.3. The court determined that bad faith is different from an abuse of discretion, in that an abuse of discretion occurs when a person acts within his or her authority but the action lacks justification, while bad faith "involves an implemented attitude that completely transcends the circumference of authority granted" to the actor. *Id.* Thus, the *Falline* court viewed the exception to discretionary immunity broadly.

Following *Falline*, this court adopted, in *Martinez*, the federal test for determining whether discretionary-function immunity applies. 123 Nev. at 446, 168 P.3d at 729. Under the two-part federal test, the first step is to determine whether the government conduct involves judgment or choice. *Id.* at 446-47, 168 P.3d at 729. If a statute, regulation, or policy requires the government employee to follow a specific course of action for which the employee has no option but to comply with the directive, and the employee fails to follow this directive, the discretionary-immunity exception does not apply to the employee's action because the employee is

SUPREME COURT
OF
NEVADA

(O) 1947A

19

not acting with individual judgment or choice. *Gaubert*, 499 U.S. at 322. On the other hand, if an employee is free to make discretionary decisions when executing the directives of a statute, regulation, or policy, the test's second step requires the court to examine the nature of the actions taken and whether they are susceptible to policy analysis. *Martinez*, 123 Nev. at 445-46, 168 P.3d at 729; *Gaubert*, 499 U.S. at 324. "[E]ven assuming the challenged conduct involves an element of judgment [or choice]," the second step requires the court to determine "whether that judgment [or choice] is of the kind that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 322-23. If "the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime," discretionary-function immunity will not bar the claim. *Id.* at 324-25. The second step focuses on whether the conduct undertaken is a policy-making decision regardless of the employee's subjective intent when he or she acted. *Martinez*, 123 Nev. at 445, 168 P.3d at 728.

FTB argues that the federal test abolished the *Falline* intentional tort or bad-faith misconduct exception to discretionary-function immunity because the federal test is objective, not subjective. Hyatt asserts that an intentional or bad-faith tort will not meet the two-part discretionary-immunity test because such conduct cannot be discretionary or policy-based.

Other courts addressing similar questions have reached differing results, depending on whether the court views the restriction against considering subjective intent to apply broadly or is limited to determining if the decision is a policy-making decision. Some courts conclude that allegations of intentional or bad-faith misconduct are not

SUPREME COURT
OF
NEVADA

(O) 1947A

relevant to determining if the immunity applies because courts should not consider the employee's subjective intent at all. *Reynolds v. United States*, 549 F.3d 1108, 1112 (7th Cir. 2008); *Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1135 (10th Cir. 1999); *see also Sydnes v. United States*, 523 F.3d 1179, 1185 (10th Cir. 2008). But other courts focus on whether the employee's conduct can be viewed as a policy-based decision and hold that intentional torts or bad-faith misconduct are not policy-based acts. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006); *Palay v. United States*, 349 F.3d 418, 431-32 (7th Cir. 2003); *Coulthurst v. United States*, 214 F.3d 106, 109 (2d Cir. 2000).[6] These courts bar the application of discretionary-function immunity in intentional tort and bad-faith misconduct cases when the government action involved is "unrelated to any plausible policy objective[ ]." *Coulthurst*, 214 F.3d at 111. A closer look at these courts' decisions is useful for our analysis.

*Courts that decline to recognize bad-faith conduct that calls for an inquiry into an employee's subjective intent*

In *Franklin Savings Corp. v. United States*, 180 F.3d at 1127, 1134-42, the Tenth Circuit Court of Appeals addressed the specific issue of

---

[6]*Coulthurst* is affirmatively cited by the Seventh Circuit Court of Appeals in *Palay v. United States*, 349 F.3d 418, 431-32 (7th Cir. 2003). Although the Seventh Circuit in *Reynolds*, 549 F.3d at 1112, stated the proposition that claims of malicious and bad-faith conduct were not relevant in determining discretionary immunity because the courts do not look at subjective intent, the *Palay* court specifically held that discretionary immunity can be avoided if the actions were the result of laziness or carelessness because such actions are not policy-based decisions. *Palay*, 349 F.3d at 431-32. *Reynolds* was published after *Palay*, and while it cites to *Palay* for other unrelated issues, it does not address its holding in connection with the holding in *Palay*.

SUPREME COURT
OF
NEVADA

(O) 1947A

whether a claim for bad faith precludes the application of discretionary-function immunity. In that case, following the determination that the Franklin Savings Association was not safe or sound to conduct business, a conservator was appointed. *Id.* at 1127. Thereafter, plaintiffs Franklin Savings Association and its parent company filed suit against defendants United States government and the conservator to have the conservatorship removed. *Id.* Plaintiffs alleged that the conservator intentionally and in bad faith liquidated the company instead of preserving the company and eventually returning it to plaintiffs to transact business. *Id.* at 1128.

On appeal, the *Franklin Savings* court explained that plaintiffs did not dispute that the conservator had the authority and discretion to sell assets, but the argument was whether immunity for decisions that were discretionary could be avoided because plaintiffs alleged that the conduct was intentionally done to achieve an improper purpose—to deplete capital and retroactively exculpate the conservator's appointment. *Id.* at 1134. Thus, the court focused on the second part of the federal test. In considering whether the alleged intentional misconduct barred the application of discretionary-function immunity under the federal test, the *Franklin Savings* court first noted that the United States Supreme Court had "repeatedly insisted . . . that [tort] claims are not vehicles to second-guess policymaking." *Id.* The court further observed that the Supreme Court's modification to *Berkovitz*, in *Gaubert*, to include a query of whether the nature of the challenged conduct was "susceptible to policy analysis[,] . . . served to emphasize that courts should not inquire into the actual state of mind or decisionmaking process of federal officials charged with performing discretionary

Supreme Court
OF
Nevada

(O) 1947A

functions." *Id.* at 1135 (internal quotations omitted). The *Franklin Savings* court ultimately concluded that discretionary-function immunity attaches to bar claims that "depend[] on an employee's bad faith or state of mind in performing facially authorized acts," *id.* at 1140, and to conclude otherwise would mean that the immunity could not effectively function. *Id.* at 1140-41.

Notwithstanding its conclusion, the *Franklin Savings* court noted that such a holding had "one potentially troubling effect"; it created an "irrebuttable presumption" that government employees try to perform all discretionary functions in good faith and that the court's holding would preclude relief in cases where an official committed intentional or bad-faith conduct. *Id.* at 1141. Such a result was necessary, the court reasoned, because providing immunity for employees, so that they do not have to live and act in constant fear of litigation in response to their decisions, outweighs providing relief in the few instances of intentionally wrongful conduct. *Id.* at 1141-42. Thus, the *Franklin Savings* court broadly applied the Supreme Court rule that an actor's subjective intent should not be considered. This broad application led the court to conclude that a bad-faith claim was not sufficient to overcome discretionary-function immunity's application.

*Courts that consider whether an employee subjectively intended to further policy by his or her conduct*

Other courts have come to a different conclusion. Most significant is *Coulthurst v. United States*, 214 F.3d 106, in which the Second Circuit Court of Appeals addressed the issue of whether the inspection of weightlifting equipment by prison officials was grounded in policy considerations. In *Coulthurst*, an inmate in a federal prison was injured while using the prison's exercise equipment. *Id.* at 107. The

SUPREME COURT
OF
NEVADA

(O) 1947A

23

inmate filed suit against the United States government, alleging "'negligence and carelessness'" and a "'fail[ure] to diligently and periodically inspect'" the exercise equipment. *Id.* at 108. The lower court dismissed the complaint, reasoning that the decisions that established the procedures and timing for inspection involved "elements of judgment or choice and a balancing of policy considerations," such that discretionary-function immunity attached to bar liability. *Id.* at 109. Coulthurst appealed.

In resolving the appeal, the Court of Appeals concluded that the complaint could be read to mean different types of negligent or careless conduct. *Id.* The court explained that the complaint asserting negligence or carelessness could legitimately be read to refer to how frequently inspections should occur, which might fall under discretionary-function immunity. *Id.* But the same complaint, the court noted, could also be read to assert negligence and carelessness in the failure to carry out prescribed responsibilities, such as prison officials failing to inspect the equipment out of laziness, haste, or inattentiveness. *Id.* Under the latter reading, the court stated that

> the official assigned to inspect the machine may in laziness or haste have failed to do the inspection he claimed (by his initials in the log) to have performed; the official may have been distracted or inattentive, and thus failed to notice the frayed cable; or he may have seen the frayed cable but been too lazy to make the repairs or deal with the paperwork involved in reporting the damage.

*Id.* The court concluded that such conduct did not involve an element of judgment or choice nor was it based on policy considerations, and in such an instance, discretionary-function immunity does not attach to shield the government from suit. *Id.* at 109-11. In the end, the *Coulthurst* court held

SUPREME COURT
OF
NEVADA

(O) 1947A

24

that the inmate's complaint sufficiently alleged conduct by prison officials that was not immunized by the discretionary-function immunity exception, and the court vacated the lower court's dismissal and remanded the case for further proceedings. *Id.*

The difference in the *Franklin Savings* and *Coulthurst* approaches emanates from how broadly those courts apply the statement in *Gaubert* that "[t]he focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred . . . , but on the nature of the actions taken and on whether they are susceptible to policy analysis." 499 U.S. at 325. *Franklin Savings* interpreted this requirement expansively to preclude any consideration of whether an actor's conduct was done maliciously or in bad faith, whereas *Coulthurst* applied a narrower view of subjective intent, concluding that a complaint alleging a nondiscretionary decision that caused the injury was not grounded in public policy. Our approach in *Falline* concerning immunity for bad-faith conduct is consistent with the reasoning in *Coulthurst* that intentional torts and bad-faith conduct are acts "unrelated to any plausible policy objective[ ]" and that such acts do not involve the kind of judgment that is intended to be shielded from "judicial second-guessing." 214 F.3d at 111 (internal quotations omitted). We therefore affirm our holding in *Falline* that NRS 41.032 does not protect a government employee for intentional torts or bad-faith misconduct, as such misconduct, "by definition, [cannot] be within the actor's discretion." *Falline*, 107 Nev. at 1009, 823 P.2d at 891-92.

In light of our conclusion, we must now determine whether to grant, under comity principles, FTB immunity from Hyatt's claims. Because we conclude that discretionary-function immunity under NRS

41.032 does not include intentional torts and bad-faith conduct, a Nevada government agency would not receive immunity under these circumstances, and thus, we do not extend such immunity to FTB under comity principles, as to do so would be contrary to the policy of this state.

*Hyatt's intentional tort causes of action*

Given that FTB may not invoke immunity, we turn next to FTB's various arguments contesting the judgment in favor of Hyatt on each of his causes of action.[7] Hyatt brought three invasion of privacy causes of action—intrusion upon seclusion, publicity of private facts, and false light—and additional causes of action for breach of confidential relationship, abuse of process, fraud, and intentional infliction of emotional distress. We discuss each of these causes of action below.

This court reviews questions of law de novo. *Martinez*, 123 Nev. at 438, 168 P.3d at 724. A jury's verdict will be upheld if it is supported by substantial evidence. *Prabhu v. Levine*, 112 Nev. 1538, 1543, 930 P.2d 103, 107 (1996). Additionally, we "will not reverse an order or judgment unless error is affirmatively shown." *Schwartz v. Estate of Greenspun*, 110 Nev. 1042, 1051, 881 P.2d 638, 644 (1994).

*Invasion of privacy causes of action*

The tort of invasion of privacy embraces four different tort actions: "(a) unreasonable intrusion upon the seclusion of another; or (b) appropriation of the other's name or likeness; or (c) unreasonable

---

[7]We reject Hyatt's contention that this court previously determined that each of his causes of action were valid as a matter of law based on the facts of the case in resolving the prior writ petitions. To the contrary, this court limited its holding to whether FTB was entitled to immunity, and thus, we did not address the merits of Hyatt's claims.

SUPREME COURT
OF
NEVADA

(O) 1947A

publicity given to the other's private life; or (d) publicity that unreasonably places the other in a false light before the public." Restatement (Second) of Torts § 652A (1977) (citations omitted); *PETA v. Bobby Berosini, Ltd.*, 111 Nev. 615, 629, 895 P.2d 1269, 1278 (1995), *overruled on other grounds by City of Las Vegas Downtown Redev. Agency v. Hecht*, 113 Nev. 644, 650, 940 P.2d 134, 138 (1997). At issue in this appeal are the intrusion, disclosure, and false light aspects of the invasion of privacy tort. The jury found in Hyatt's favor on those claims and awarded him $52 million for invasion of privacy damages. Because the parties' arguments regarding intrusion and disclosure overlap, we discuss those privacy torts together, and we follow that discussion by addressing the false light invasion of privacy tort.

### *Intrusion upon seclusion and public disclosure of private facts*

On appeal, Hyatt focuses his invasion of privacy claims on FTB's disclosures of his name, address, and social security number to various individuals and entities. FTB contends that Hyatt's claims fail because the information disclosed had been disseminated in prior public records, and thus, could not form the basis of an invasion of privacy claim.

Intrusion upon seclusion and public disclosure of private facts are torts grounded in a plaintiff's objective expectation of privacy. *PETA*, 111 Nev. at 630, 631, 895 P.2d at 1279 (recognizing that the plaintiff must actually expect solitude or seclusion, and the plaintiff's expectation of privacy must be objectively reasonable); *Montesano v. Donrey Media Grp.*, 99 Nev. 644, 649, 668 P.2d 1081, 1084 (1983) (stating that the public disclosure of a private fact must be "offensive and objectionable to a reasonable person of ordinary sensibilities"); *see also* Restatement (Second) of Torts §§ 652B, 652D (1977). One defense to invasion of privacy torts, referred to as the public records defense, arises when a defendant

 

can show that the disclosed information is contained in a court's official records. *Montesano*, 99 Nev. at 649, 668 P.2d at 1085. Such materials are public facts, *id.*, and a defendant cannot be liable for disclosing information about a plaintiff that was already public. Restatement (Second) of Torts § 652D cmt. b (1977).

Here, the record shows that Hyatt's name, address, and social security number had been publicly disclosed on several occasions, before FTB's disclosures occurred, in old court documents from his divorce proceedings and in a probate case. Hyatt also disclosed the information himself when he made the information available in various business license applications completed by Hyatt. Hyatt maintains that these earlier public disclosures were from long ago, and that the disclosures were only in a limited number of documents, and therefore, the information should not be considered as part of the public domain. Hyatt asserts that this results in his objective expectation of privacy in the information being preserved.

This court has never limited the application of the public records defense based on the length of time between the public disclosure and the alleged invasion of privacy. In fact, in *Montesano*, 99 Nev. 644, 668 P.2d 1081, we addressed disclosed information contained in a public record from 20 years before the disclosure at issue there and held that the protection still applied. Therefore, under the public records defense, as delineated in *Montesano*, Hyatt is precluded from recovering for invasion of privacy based on the disclosure of his name, address, and social security

number, as the information was already publicly available, and he thus lacked an objective expectation of privacy in the information.[8]

Because Hyatt cannot meet the necessary requirements to establish his invasion of privacy causes of action for intrusion upon seclusion and public disclosure of private facts, we reverse the district court's judgment based on the jury verdict as to these causes of action.[9]

*False light invasion of privacy*

Regarding Hyatt's false light claim, he argues that FTB portrayed him in a false light throughout its investigation because FTB's various disclosures portrayed Hyatt as a "tax cheat." FTB asserts that Hyatt failed to provide any evidence to support his claim. Before reaching the parties' arguments as to Hyatt's false light claim, we must first determine whether to adopt this cause of action in Nevada, as this court

---

[8]Beyond his name, address, and social security number, Hyatt also alleged improper disclosures related to the publication of his credit card number on one occasion and his licensing contracts on another occasion. But this information was only disclosed to one or two third parties, and it was information that the third parties already had in their possession from prior dealings with Hyatt. Thus, we likewise conclude that Hyatt lacked an objective expectation of privacy as a matter of law. *PETA*, 111 Nev. at 631, 895 P.2d at 1279; *Montesano*, 99 Nev. at 649, 668 P.2d at 1084.

[9]Hyatt also argues that FTB violated his right to privacy when its agents looked through his trash, looked at a package on his doorstep, and spoke with neighbors, a postal carrier, and a trash collector. Hyatt does not provide any authority to support his assertion that he had a legally recognized objective expectation of privacy with regard to FTB's conduct in these instances, and thus, we decline to consider this contention. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (explaining that this court need not consider claims that are not cogently argued or supported by relevant authority).

has only impliedly recognized the false light invasion of privacy tort. *See PETA*, 111 Nev. at 622 n.4, 629, 895 P.2d at 1273 n.4, 1278. "Whether to adopt [this tort] as [a] viable tort claim[ ] is a question of state law." *Denver Publ'g Co. v. Bueno*, 54 P.3d 893, 896 (Colo. 2002).

*Adopting the false light invasion of privacy tort*

Under the Restatement, an action for false light arises when

[o]ne who gives publicity to a matter concerning another that places the other before the public in a false light . . . if

(a) the false light in which the other was placed would be highly offensive to a reasonable person, and

(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Restatement (Second) of Torts § 652E (1977). The greatest constraint on the tort of false light is its similarity to the tort of defamation.

A majority of the courts that have adopted the false light privacy tort have done so after concluding that false light and defamation are distinct torts.[10]  *See Welling v. Weinfeld*, 866 N.E.2d 1051 (Ohio 2007) (explaining the competing views); *West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640 (Tenn. 2001) (same).  For these courts, defamation law seeks to protect an objective interest in one's reputation, "either economic,

---

[10]This court, in *PETA*, while not reaching the false light issue, observed that "'[t]he false light privacy action differs from a defamation action in that the injury in privacy actions is mental distress from having been exposed to public view, while the injury in defamation actions is damage to reputation.'" 111 Nev. at 622 n.4, 895 P.2d at 1274 n.4 (quoting *Rinsley v. Brandt*, 700 F.2d 1304, 1307 (10th Cir. 1983)).

SUPREME COURT
OF
NEVADA

(O) 1947A

political, or personal, in the outside world." *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70, 83 (W. Va. 1984) (internal quotations omitted). By contrast, false light invasion of privacy protects one's subjective interest in freedom from injury to the person's right to be left alone. *Id.* Therefore, according to these courts there are situations (being falsely portrayed as a victim of a crime, such as sexual assault, or being falsely identified as having a serious illness, or being portrayed as destitute) in which a person may be placed in a harmful false light even though it does not rise to the level of defamation. *Welling*, 866 N.E.2d at 1055-57; *West*, 53 S.W.3d at 646. Without recognizing the separate false light privacy tort, such an individual would be left without a remedy. *West*, 53 S.W.3d at 646.

On the other hand, those courts that have declined to adopt the false light tort have done so based on its similarity to defamation. *See, e.g., Sullivan v. Pulitzer Broad. Co.*, 709 S.W.2d 475 (Mo. 1986); *Renwick v. News & Observer Publ'g Co.*, 312 S.E.2d 405 (N.C. 1984); *Cain v. Hearst Corp.*, 878 S.W.2d 577 (Tex. 1994). "The primary objection courts level at false light is that it substantially overlaps with defamation, both in conduct alleged and interests protected." *Denver Publ'g Co.*, 54 P.3d at 898. For these courts, tort law serves to deter "socially wrongful conduct," and thus, it needs "clarity and certainty." *Id.* And because the parameters defining the difference between false light and defamation are blurred, these courts conclude that "such an amorphous tort risks chilling fundamental First Amendment freedoms." *Id.* In such a case, a media defendant would have to "anticipate whether statements are 'highly offensive' to a reasonable person of ordinary sensibilities even though their publication does no harm to the individual's reputation." *Id.* at 903. Ultimately, for these courts, defamation, appropriation, and intentional

SUPREME COURT
OF
NEVADA

(O) 1947A

31

infliction of emotional distress provide plaintiffs with adequate remedies. *Id*. at 903.

Considering the different approaches detailed above, we, like the majority of courts, conclude that a false light cause of action is necessary to fully protect privacy interests, and we now officially recognize false light invasion of privacy as a valid cause of action in connection with the other three privacy causes of action that this court has adopted. Because we now recognize the false light invasion of privacy cause of action, we address FTB's substantive arguments regarding Hyatt's false light claim.

### Hyatt's false light claim

The crux of Hyatt's false light invasion of privacy claim is that FTB's demand-for-information letters, its other contact with third parties through neighborhood visits and questioning, and the inclusion of his case on FTB's litigation roster suggested that he was a "tax cheat," and therefore, portrayed him in a false light. On appeal, FTB argues that Hyatt presented no evidence that anyone thought that he was a "tax cheat" based on the litigation roster or third-party contacts.

FTB's litigation roster was an ongoing monthly litigation list that identified the cases that FTB was involved in. The list was available to the public and generally contained audit cases in which the protest and appeal process had been completed and the cases were being litigated in court. After Hyatt initiated this litigation, FTB began including the case on its roster, which Hyatt asserts was improper because the protests in his audits had not yet been completed. FTB, however, argues that because the lawsuit was ongoing, it did not place Hyatt in a false light by including him on the roster. Further, FTB argues that the litigation roster that Hyatt relied on was not false. When FTB began including Hyatt on the

Supreme Court
OF
Nevada

(O) 1947A

32

litigation roster, he was not falsely portrayed because he was indeed involved in litigation with FTB in this case. Hyatt did not demonstrate that the litigation roster contained any false information. Rather, he only argued that his inclusion on the list was improper because his audit cases had not reached the final challenge stage like other cases on the roster.

FTB's contacts with third parties through letters, demands for information, or in person was not highly offensive to a reasonable person and did not falsely portray Hyatt as a "tax cheat." In contacting third parties, FTB was merely conducting its routine audit investigations.

The record before us reveals that no evidence presented by Hyatt in the underlying suit supported the jury's conclusion that FTB portrayed Hyatt in a false light. *See Prabhu*, 112 Nev. at 1543, 930 P.2d at 107. Because Hyatt has failed to establish a false light claim, we reverse the district court's judgment on this claim.[11]

Having addressed Hyatt's invasion of privacy causes of action, we now consider FTB's challenges to Hyatt's remaining causes of action for breach of confidential relationship, abuse of process, fraud and intentional infliction of emotional distress.

*Breach of confidential relationship*

A breach of confidential relationship cause of action arises "by reason of kinship or professional, business, or social relationships between the parties." *Perry v. Jordan*, 111 Nev. 943, 947, 900 P.2d 335, 337 (1995). On appeal, FTB contends that Hyatt could not prevail as a matter of law on his claim for breach of a confidential relationship because he cannot

---

[11]Based on this resolution, we need not address the parties' remaining arguments involving this cause of action.

 

establish the requisite confidential relationship. In the underlying case, the district court denied FTB's motion for summary judgment and its motion for judgment as a matter of law, which presented similar arguments, and at trial the jury found FTB liable on this cause of action. Hyatt argues that his claim for breach of confidentiality falls within the parameters of *Perry* because FTB promised to protect his confidential information and its position over Hyatt during the audits established the necessary confidential relationship.[12]

In *Perry*, this court recognized that a confidential relationship exists when a party gains the confidence of another party and purports to advise or act consistently with the other party's interest. *Id.* at 947, 900 P.2d at 338. In that case, store owner Perry sold her store to her neighbor and friend, Jordan, knowing that Jordan had no business knowledge, that Jordan was buying the store for her daughters, not for herself, and that Jordan would rely on Perry to run the store for a contracted one-year period after the sale was complete. *Id.* at 945-46, 900 P.2d at 336-37. Not long after the sale, Perry stopped running the store, and the store eventually closed. *Id.* at 946, 900 P.2d at 337. Jordan filed suit against Perry for, among other things, breach of a confidential relationship. *Id.* A jury found in Jordan's favor and awarded damages. *Id.* Perry appealed, arguing that this court had not recognized a claim for breach of a confidential relationship. *Id.*

---

[12]FTB initially argues that Hyatt attempts to blend the cause of action recognized in *Perry* with a separate breach of confidentiality cause of action that, while recognized in other jurisdictions, has not been recognized by this court. We reject this contention, as the jury was instructed based on the cause of action outlined in *Perry*.

On appeal, this court ruled that a breach of confidential relationship claim was available under the facts of the case. *Id.* at 947, 900 P.2d at 338. The court noted that Perry "held a duty to act with the utmost good faith, based on her confidential relationship with Jordan[, and that the] duty requires affirmative disclosure and avoidance of self dealing." *Id.* at 948, 900 P.2d at 338. The court explained that "[w]hen a confidential relationship exists, the person in whom the special trust is placed owes a duty to the other party similar to the duty of a fiduciary, requiring the person to act in good faith and with due regard to the interests of the other party." *Id.* at 947, 900 P.2d at 338.

FTB contends that the relationship between a tax auditor and the person being audited does not create the necessary relationship articulated in *Perry* to establish a breach of confidential relationship cause of action. In support of this proposition, FTB cites to *Johnson v. Sawyer*, which was heard by the Fifth Circuit Court of Appeals. 47 F.3d 716 (5th Cir. 1995) (en banc). In *Johnson*, the plaintiff sought damages from press releases by the Internal Revenue Service (IRS) based on a conviction for filing a fraudulent tax return. *Id.* at 718. Johnson was criminally charged based on erroneous tax returns. *Id.* at 718-19. He eventually pleaded guilty to a reduced charge as part of a plea bargain. *Id.* at 718-20. Following the plea agreement, two press releases were issued that contained improper and private information about Johnson. *Id.* at 720-21. Johnson filed suit against the IRS based on these press releases, arguing that they cost him his job and asserting several causes of action, one being breach of a confidential relationship. *Id.* at 718, 725, 738. On appeal, the Fifth Circuit Court of Appeals affirmed the district court's ruling that a breach of a confidential relationship could not be maintained based on the

Supreme Court
OF
Nevada

(0) 1947A

35

relationship between Johnson and the IRS, as it was clear that the two parties "stood in an adversarial relationship." *Id.* at 738 n.47.

Hyatt rejects FTB's reliance on this case, arguing that the *Johnson* ruling is inapposite to the present case because, here, FTB made express promises regarding protecting Hyatt's confidential information but then failed to keep those promises. Hyatt maintains that although FTB may not have acted in his best interest in every aspect of the audits, as to keeping his information confidential, FTB affirmatively undertook that responsibility and breached that duty by revealing confidential information.

But in conducting the audits, FTB was not required to act with Hyatt's interests in mind; rather, it had a duty to proceed on behalf of the state of California's interest. *Johnson*, 47 F.3d at 738 n.47. Moreover, the parties' relationship was not akin to a family or business relationship. *Perry*, 111 Nev. at 947, 900 P.2d at 337-38. Hyatt argues for a broad range of relationships that can meet the requirement under *Perry*, but we reject this contention. *Perry* does not provide for so expansive a relationship as Hyatt asks us to recognize as sufficient to establish a claim for a breach of confidential relationship.[13] Thus, FTB and Hyatt's relationship cannot form the basis for a breach of a confidential

---

[13]Further, we note that the majority of cases that Hyatt cites as authority for a more expansive viewpoint of a confidential relationship involve claims arising from a doctor-patient confidentiality privilege, which does not apply here. *See, e.g., Doe v. Medlantic Health Care Grp., Inc.*, 814 A.2d 939, 950-51 (D.C. 2003); *Humphers v. First Interstate Bank of Or.*, 696 P.2d 527, 533-35 (Or. 1985).

relationship cause of action, and this cause of action fails as a matter of law. The district court judgment in Hyatt's favor on this claim is reversed.

*Abuse of process*

A successful abuse of process claim requires "'(1) an ulterior purpose by the defendants other than resolving a legal dispute, and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding.'" *LaMantia v. Redisi*, 118 Nev. 27, 30, 38 P.3d 877, 879 (2002) (quoting *Posadas v. City of Reno*, 109 Nev. 448, 457, 851 P.2d 438, 444-45 (1993)). Put another way, a plaintiff must show that the defendant "willfully and improperly *used the legal process* to accomplish" an ulterior purpose other than resolving a legal dispute. *Id.* at 31, 38 P.3d at 880 (emphasis added).

FTB asserts that it was entitled to judgment as a matter of law on Hyatt's abuse of process cause of action because it did not actually use the judicial process, as it never sought to judicially enforce compliance with the demand-for-information forms and did not otherwise use the judicial process in conducting its audits of Hyatt. In response, Hyatt argues that FTB committed abuse of process by sending demand-for-information forms to individuals and companies in Nevada that are not subject to the California law cited in the form.

Because FTB did not use any legal enforcement process, such as filing a court action, in relation to its demands for information or otherwise during the audits, Hyatt cannot meet the requirements for establishing an abuse of process claim. *LaMantia*, 118 Nev. at 31, 38 P.3d at 880; *ComputerXpress, Inc. v. Jackson*, 113 Cal. Rptr. 2d 625, 644 (Ct. App. 2001) (explaining that abuse of process only arises when there is actual "use of *the machinery of the legal system* for an ulterior motive" (internal quotations omitted)); *see also Tuck Beckstoffer Wines LLC v.*

SUPREME COURT
OF
NEVADA

(O) 1947A

*Ultimate Distribs., Inc.*, 682 F. Supp. 2d 1003, 1020 (N.D. Cal. 2010). On this cause of action, then, FTB is entitled to judgment as a matter of law, and we reverse the district court's judgment.

*Fraud*

To prove a fraud claim, the plaintiff must show that the defendant made a false representation that the defendant knew or believed was false, that the defendant intended to persuade the plaintiff to act or not act based on the representation, and that the plaintiff had reason to rely on the representation and suffered damages. *Bulbman, Inc. v. Nev. Bell*, 108 Nev. 105, 111, 825 P.2d 588, 592 (1992). It is the jury's role to make findings on the factors necessary to establish a fraud claim. *Powers v. United Servs. Auto. Ass'n*, 114 Nev. 690, 697-98, 962 P.2d 596, 600-01 (1998). This court will generally not disturb a jury's verdict that is supported by substantial evidence. *Taylor v. Thunder*, 116 Nev. 968, 974, 13 P.3d 43, 46 (2000). Substantial evidence is defined as "evidence that a reasonable mind might accept as adequate to support a conclusion." *Winchell v. Schiff*, 124 Nev. 938, 944, 193 P.3d 946, 950 (2008) (internal quotations omitted).

When Hyatt's 1991 audit began, FTB informed him that during the audit process Hyatt could expect FTB employees to treat him with courtesy, that the auditor assigned to his case would clearly and concisely request information from him, that any personal and financial information that he provided to FTB would be treated confidentially, and that the audit would be completed within a reasonable time. FTB contends that its statements in documents to Hyatt, that it would provide him with courteous treatment and keep his information confidential, were insufficient representations to form a basis for a fraud claim, and even if the representations were sufficient, there was no evidence that FTB knew

 

that they were false when made. In any case, FTB argues that Hyatt did not prove any reliance because he was required to participate in the audits whether he relied on these statements or not. Hyatt asserts that FTB knowingly misrepresented its promise to treat him fairly and impartially and to protect his private information. For the reasons discussed below, we reject FTB's argument that it was entitled to judgment as a matter of law on Hyatt's fraud claim.

The record before us shows that a reasonable mind could conclude that FTB made specific representations to Hyatt that it intended for Hyatt to rely on, but which it did not intend to fully meet. FTB represented to Hyatt that it would protect his confidential information and treat him courteously. At trial, Hyatt presented evidence that FTB disclosed his social security number and home address to numerous people and entities and that FTB revealed to third parties that Hyatt was being audited. In addition, FTB sent letters concerning the 1991 audit to several doctors with the same last name, based on its belief that one of those doctors provided Hyatt treatment, but without first determining which doctor actually treated Hyatt before sending the correspondence. Furthermore, Hyatt showed that FTB took 11 years to resolve Hyatt's protests of the two audits. Hyatt alleged that this delay resulted in $8,000 in interest per day accruing against him for the outstanding taxes owed to California. Also at trial, Hyatt presented evidence through Candace Les, a former FTB auditor and friend of the main auditor on Hyatt's audit, Sheila Cox, that Cox had made disparaging comments about Hyatt and his religion, that Cox essentially was intent on imposing an assessment against Hyatt, and that FTB promoted a culture in which tax assessments were the end goal whenever an audit was undertaken. Hyatt also testified

that he would not have hired legal and accounting professionals to assist in the audits had he known how he would be treated. Moreover, Hyatt stated that he incurred substantial costs that he would not otherwise have incurred by paying for professional representatives to assist him during the audits.

The evidence presented sufficiently showed FTB's improper motives in conducting Hyatt's audits, and a reasonable mind could conclude that FTB made fraudulent representations, that it knew the representations were false, and that it intended for Hyatt to rely on the representations.[14] What's more, the jury could reasonably conclude that Hyatt relied on FTB's representations to act and participate in the audits in a manner different than he would have otherwise, which resulted in damages. Based on this evidence, we conclude that substantial evidence supports each of the fraud elements and that FTB is not entitled to judgment as a matter of law on this cause of action.[15]

_____

[14]FTB's argument concerning government agents making representations beyond the scope of law is without merit.

[15]FTB further argues that several evidentiary errors by the district court warrant a new trial. These errors include admitting evidence concerning whether the audit conclusions were correct and excluding FTB's evidence seeking to rebut an adverse inference for spoliation of evidence. FTB also asserts that the district court improperly instructed the jury by permitting it to consider the audit determinations. Although we agree with FTB that the district court abused its discretion in these evidentiary rulings and in its jury instruction number 24, as discussed more fully below in regard to Hyatt's intentional infliction of emotional distress claim, we conclude that these errors were harmless as to Hyatt's fraud claim because sufficient evidence of fraud existed for the jury to find in Hyatt's favor on each required element for fraud. *See Cook v. Sunrise Hosp. & Med. Ctr., LLC*, 124 Nev. 997, 1006, 194 P.3d 1214, 1219 (2008)

*continued on next page . . .*

SUPREME COURT
OF
NEVADA

(O) 1947A



*Fraud damages*

Given our affirmance of the district court's judgment on the jury verdict in Hyatt's favor on his fraud claim, we turn to FTB's challenge as to the special damages awarded Hyatt on his fraud claim.[16] In doing so, we address FTB's entitlement to statutory caps on the amount of damages recoverable to the same extent that a Nevada government agency would receive statutory caps under principles of comity.[17]

NRS 41.035 (1987) provides a statutory cap on liability damages in tort actions "against a present or former officer or employee of the state or any political subdivision." At the time Hyatt suffered his

---

*. . . continued*

(holding that when there is error in a jury instruction, "prejudice must be established in order to reverse a district court judgment," and this is done by "showing that, but for the error, a different result might have been reached"); *El Cortez Hotel, Inc. v. Coburn*, 87 Nev. 209, 213, 484 P.2d 1089, 1091 (1971) (stating that an evidentiary error must be prejudicial in order to warrant reversal and remand).

[16]The jury verdict form included a separate damage award for Hyatt's fraud claim. We limit our discussion of Hyatt's fraud damages to these special damages that were awarded. To the extent that Hyatt argues that he is entitled to other damages for his fraud claim beyond the special damages specified in the jury verdict form, we reject this argument and limit any emotional distress damages to his recovery under his intentional infliction of emotional distress claim, as addressed below.

[17]FTB argues that under the law-of-the-case doctrine, comity applies to afford it a statutory cap on damages and immunity from punitive damages based on this court's conclusions in the earlier writ petitions. But this court did not previously address these issues and the issues are different, thus, law of the case does not apply. *Dictor v. Creative Mgmt. Servs.*, 126 Nev. 41, 44-45, 223 P.3d 332, 334-35 (2010).

injuries in 1993, the applicable statutory cap pursuant to NRS 41.035(1) was $50,000. *See Las Vegas Metro. Police Dep't v. Yeghiazarian*, 129 Nev. 760, 768, 312 P.3d 503, 509 (2013) (noting that a tort claim accrues at the time of the plaintiff's injuries). The parties agree that NRS 41.035 applies on a per-claim basis.

The Supreme Court disagreed with our determination that FTB was not entitled to the statutory damages cap on Hyatt's fraud claim. *Franchise Tax Bd. of Cal. v. Hyatt (Hyatt II)*, ___ U.S. ___, ___, 136 S. Ct. 1277, 1281 (2016). In reviewing our prior decision, the Court noted that we "explained [our] holding by stating that California's efforts to control the actions of its own agencies were inadequate as applied to Nevada's own citizens. Hence, Nevada's policy interest in providing adequate redress to Nevada's citizens [wa]s paramount to providing [FTB] a statutory cap on damages under comity." *Id.* at ___, 136 S. Ct. at 1280 (second alteration in original) (internal quotation marks omitted). The Court determined that this explanation "cannot justify the application of a special and discriminatory rule" that would deprive FTB of the benefit of the statutory damages cap. *Id.* at ___, 136 S. Ct. at 1282. The Court held that "[w]ith respect to damages awards greater than $50,000, the ordinary principles of Nevada law do not conflict with California law, for both laws would grant immunity. Similarly, in respect to such amounts, the policies underlying California law and Nevada's usual approach are not opposed; they are consistent." *Id.* (internal quotation marks and citation omitted).

Accordingly, although immunity with respect to damages against FTB in an amount greater than $50,000 is consistent with both Nevada and California law, California's law of *complete* immunity from recovery is inconsistent with Nevada law. *See id.* at ___, 136 S. Ct. at

1281. We thus conclude that, while FTB is not immune such that any recovery is barred in this case, FTB is entitled to the $50,000 statutory cap on damages a Nevada agency would be entitled to in similar circumstances. *See* NRS 41.035 (1987). We thus reverse the damages award for fraud and instruct the district court to enter a damages award for fraud in the amount of $50,000. Because the statutory cap also applies to prejudgment interest on damages, we reverse the award for prejudgment interest and conclude that Hyatt is not entitled to prejudgment interest on the fraud claim because it would cause the total award to exceed $50,000. NRS 41.035(1) ("An award for damages . . . may not exceed the sum of $50,000, exclusive of interest computed from the date of judgment . . . ."); *Arnesano v. State, Dep't of Transp.*, 113 Nev. 815, 822, 942 P.2d 139, 144 (1997) ("[C]laims for prejudgment interest are only valid when the interest award does not cause the total individual award, exclusive of post-judgment interest, attorney fees and costs, to exceed $50,000."), *abrogated on other grounds by Martinez v. Maruszczak*, 123 Nev. 433, 168 P.3d 720 (2007).

The statutory cap does not include awards for attorney fees and costs. *See Yeghiazarian*, 129 Nev. at 769, 312 P.3d at 509 (allowing recovery of attorney fees in addition to damages subject to NRS 41.035's cap). Therefore, a determination by the district court with respect to fees and costs must be made on remand.

*Intentional infliction of emotional distress*

During discovery in the underlying case, Hyatt refused to disclose his medical records. As a result, he was precluded at trial from presenting any medical evidence of severe emotional distress. Nevertheless, at trial, Hyatt presented evidence designed to demonstrate his emotional distress in the form of his own testimony regarding the

Supreme Court
of
Nevada

(O) 1947A

emotional distress he experienced, along with testimony from his son and friends detailing their observation of changes in Hyatt's behavior and health during the audits. Based on this testimony, the jury found in Hyatt's favor on his intentional infliction of emotional distress (IIED) claim and awarded him $82 million for emotional distress damages.

To recover on a claim for IIED, a plaintiff must prove "(1) extreme and outrageous conduct on the part of the defendant; (2) intent to cause emotional distress or reckless disregard for causing emotional distress; (3) that the plaintiff actually suffered extreme or severe emotional distress; and (4) causation." *Miller v. Jones*, 114 Nev. 1291, 1299-1300, 970 P.2d 571, 577 (1998); *see also Barmettler v. Reno Air, Inc.*, 114 Nev. 441, 447, 956 P.2d 1382, 1386 (1998). A plaintiff must set forth "objectively verifiable indicia" to establish that the plaintiff "actually suffered extreme or severe emotional distress." *Miller*, 114 Nev. at 1300, 970 P.2d at 577.

On appeal, FTB argues that Hyatt failed to establish that he actually suffered severe emotional distress because he failed to provide any medical evidence or other objectively verifiable evidence to establish such a claim. In response, Hyatt contends that the testimony provided by his family and other acquaintances sufficiently established objective proof of the severe and extreme emotional distress he suffered, particularly in light of the facts of this case demonstrating the intentional harmful treatment he endured from FTB. Hyatt asserts that the more severe the harm, the lower the amount of proof necessary to establish that he suffered severe emotional distress. While this court has held that objectively verifiable evidence is necessary in order to establish an IIED

claim, *id.*, we have not specifically addressed whether this necessarily requires medical evidence or if other objective evidence is sufficient.

The Restatement (Second) of Torts § 46 (1977), in comments j and k, provide for a sliding-scale approach in which the increased severity of the conduct will require less in the way of proof that emotional distress was suffered in order to establish an IIED claim. Restatement (Second) of Torts § 46 cmt. j (1977) ("The intensity and the duration of the distress are factors to be considered in determining its severity. Severe distress must be proved; but in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed."); Restatement (Second) of Torts § 46 cmt. k (1977) (stating that "if the enormity of the outrage carries conviction that there has in fact been severe emotional distress, bodily harm is not required"). This court has also impliedly recognized this sliding-scale approach, although stated in the reverse. *Nelson v. City of Las Vegas*, 99 Nev. 548, 665 P.2d 1141 (1983), In *Nelson*, this court explained that "[t]he less extreme the outrage, the more appropriate it is to require evidence of physical injury or illness from the emotional distress." *Id.* at 555, 665 P.2d at 1145.

Further, other jurisdictions that require objectively verifiable evidence have determined that such a mandate does not always require medical evidence. *See Lyman v. Huber*, 10 A.3d 707 (Me. 2010) (stating that medical testimony is not mandatory to establish an IIED claim, although only in rare, extreme circumstances); *Buckman-Peirson v. Brannon*, 822 N.E.2d 830, 840-41 (Ohio Ct. App. 2004) (stating that medical evidence is not required, but also holding that something more than just the plaintiff's own testimony was necessary); *see also Dixon v. Denny's, Inc.*, 957 F. Supp. 792, 796 (E.D. Va. 1996) (stating that plaintiff

failed to establish an IIED claim because plaintiff did not provide objective evidence, such as medical bills "or even the testimony of friends or family"). Additionally, in *Farmers Home Mutual Insurance Co. v. Fiscus*, 102 Nev. 371, 725 P.2d 234 (1986), this court upheld an award for mental and emotional distress even though the plaintiffs' evidence did not include medical evidence or testimony. *Id.* at 374-75, 725 P.2d at 236. While not specifically addressing an IIED claim, the *Fiscus* court addressed the recovery of damages for mental and emotional distress that arose from an insurance company's unfair settlement practices when the insurance company denied plaintiffs' insurance claim after their home had flooded. *Id.* at 373, 725 P.2d at 235. In support of the claim for emotional and mental distress damages, the husband plaintiff testified that he and his wife lost the majority of their personal possessions and that their house was uninhabitable, that because the claim had been rejected they lacked the money needed to repair their home and the house was condemned, and after meeting with the insurance company's representative the wife had an emotional breakdown. *Id.* at 374, 725 P.2d at 236. This court upheld the award of damages, concluding that the above evidence was sufficient to prove that plaintiffs had suffered mental and emotional distress. *Id.* at 374-75, 725 P.2d at 236. In so holding, this court rejected the insurance company's argument that there was insufficient proof of mental and emotional distress because there was no medical evidence or independent witness testimony. *Id.*

Based on the foregoing, we now specifically adopt the sliding-scale approach to proving a claim for IIED. Under this sliding-scale approach, while medical evidence is one acceptable manner in establishing that severe emotional distress was suffered for purposes of an IIED claim,

SUPREME COURT OF NEVADA

(0) 1947A

other objectively verifiable evidence may suffice to establish a claim when the defendant's conduct is more extreme, and thus, requires less evidence of the physical injury suffered.

Turning to the facts in the present case, Hyatt suffered extreme treatment from FTB. As explained above in discussing the fraud claim, FTB disclosed personal information that it promised to keep confidential and delayed resolution of Hyatt's protests for 11 years, resulting in a daily interest charge of $8,000. Further, Hyatt presented testimony that the auditor who conducted the majority of his two audits made disparaging remarks about Hyatt and his religion, was determined to impose tax assessments against him, and that FTB fostered an environment in which the imposition of tax assessments was the objective whenever an audit was undertaken. These facts support the conclusion that this case is at the more extreme end of the scale, and therefore less in the way of proof as to emotional distress suffered by Hyatt is necessary.

In support of his IIED claim, Hyatt presented testimony from three different people as to how the treatment from FTB caused Hyatt emotional distress and physically affected him. This included testimony of how Hyatt's mood changed dramatically, that he became distant and much less involved in various activities, started drinking heavily, suffered severe migraines and had stomach problems, and became obsessed with the legal issues involving FTB. We conclude that this evidence, in connection with the severe treatment experienced by Hyatt, provided

SUPREME COURT
OF
NEVADA

(O) 1947A

sufficient evidence from which a jury could reasonably determine that Hyatt suffered severe emotional distress.[18]

*Trial errors at district court*

FTB also claims that the jury's award should be reversed based on numerous evidentiary and jury instruction errors committed by the trial court.

Early in this case, the district court granted FTB partial summary judgment and dismissed Hyatt's declaratory relief cause of action concerning when he moved from California to Nevada. The district court reached this conclusion because the audits were still under review in California, and therefore, the Nevada court lacked jurisdiction to address whether the audits' conclusions were accurate. The partial summary judgment was not challenged by Hyatt at any point to this court, and thus, the district court's ruling was in effect throughout the trial. Consequently, whether the audits' determinations were correct was not an issue in the Nevada litigation.

On appeal, FTB argues that the district court erroneously allowed evidence and a jury instruction that went directly to whether the audits were properly determined. FTB frames this issue as whether the district court exceeded the case's jurisdictional boundaries, but the issue more accurately involves the admissibility of evidence and whether a jury instruction given by the district court was proper in light of the

---

[18]To the extent FTB argues that it was prejudiced by its inability to obtain Hyatt's medical records, we reject this argument as the rulings below on this issue specifically allowed FTB to argue to the jury the lack of any medical treatment or evidence by Hyatt.

SUPREME COURT
OF
NEVADA

(O) 1947A

jurisdictional ruling. We review both the admissibility of evidence and the propriety of jury instructions for an abuse of discretion. *See Hansen v. Universal Health Servs.*, 115 Nev. 24, 27, 974 P.2d 1158, 1160 (1999) (evidence); *Allstate Ins. Co. v. Miller*, 125 Nev. 300, 319, 212 P.3d 318, 331 (2009) (jury instruction).

> *Evidence improperly permitted challenging audits' conclusions*

FTB argues that the district court violated its jurisdictional restriction governing this case, because by allowing Hyatt's claims to go forward based on the evidence presented at trial, the jury was in effect required to make findings on Hyatt's residency and whether he owed taxes. FTB points to the testimony of a number of Hyatt's witnesses that focused on whether the audits' results were correct: (1) Hyatt's tax accountant and tax attorney, who were his representatives during the audits, testified to their cooperation with FTB and that they did not attempt to intimidate the auditor to refute two bases for the imposition of penalties by FTB for lack of cooperation and intimidation; (2) an expert tax attorney witness testified about Hyatt's representatives' cooperation during the audits to refute the lack of cooperation allegation; (3) an expert witness testified as to the lifestyles of wealthy people to refute the allegation that Hyatt's actions of living in a low-income apartment building in Las Vegas and having no security were "implausible behaviors"; and especially, (4) expert testimony of former FTB agent Malcom Jumulet regarding audit procedures, and Jumulet's testimony as to how FTB analyzed and weighed the information obtained throughout the audits as challenging the results of the audits reached by FTB. Further, FTB points to Hyatt's arguments regarding an alleged calculation error as to the amount of taxable income, which FTB argues is

SUPREME COURT
OF
NEVADA

(O) 1947A

49

an explicit example of Hyatt challenging the conclusions of the audits. Hyatt argues that all the evidence he presented did not challenge the audits, but was proffered to demonstrate that the audits were conducted in bad faith and in an attempt to "trump up a case against Hyatt and extort a settlement."

While much of the evidence presented at trial would not violate the restriction against considering the audits' conclusions, there are several instances in which the evidence does violate this ruling. These instances included evidence challenging whether FTB made a mathematical error in the amount of income that it taxed, whether an auditor improperly gave credibility to certain interviews of estranged family members, whether an auditor appropriately determined that certain information was not credible or not relevant, as well as the testimony outlined above that Hyatt presented, which challenged various aspects of the fraud penalties.

The expert testimony regarding the fraud penalties went to the audits' determinations and had no utility in showing any intentional torts unless it was first concluded that the audits' determinations were incorrect. For example, the expert testimony concerning typical lifestyles of wealthy individuals had relevance only to show that FTB erroneously concluded that Hyatt's conduct, such as renting an apartment in a low-income complex, was fraudulent because he was wealthy and allegedly only rented the apartment to give the appearance of living in Nevada. Whether such a conclusion was a correct determination by FTB is precisely what this case was not allowed to address. The testimony does not show wrongful intent or bad faith without first concluding that the decisions were wrong, unless it was proven that FTB knew wealthy

Supreme Court
of
Nevada

(O) 1947A

50

individuals' tendencies, that they applied to all wealthy individuals, and that FTB ignored them. None of this was established, and thus, the testimony only went to the audits' correctness, which was not allowed. These are instances where the evidence went solely to challenging whether FTB made the right decisions in its audits. As such, it was an abuse of discretion for the district court to permit this evidence to be admitted. *Hansen*, 115 Nev. at 27, 974 P.2d at 1160.

*Jury instruction permitting consideration of audits' determinations*

FTB also argues that the district court wrongly instructed the jury. Specifically, it asserts that the jury instruction given at the end of trial demonstrates that the district court allowed the jury to improperly consider FTB's audit determinations. Hyatt counters FTB's argument by relying on an earlier instruction that was given to the jury that he argues shows that the district court did not allow the jury to determine the appropriateness of the audits' results, as it specifically instructed the jury not to consider the audits' conclusions.

As background, before trial began, and at various times during the trial, the district court read an instruction to the jury that they were not to consider whether the audits' conclusions were correct:

> Although this case arises from the residency tax audit conducted by FTB, it is important for you to understand that you will not be asked, nor will you be permitted to make any determinations related to Mr. Hyatt's residency or the correctness of the tax assessments, penalties and interest assessed by FTB against Mr. Hyatt. Thus, although you may hear evidence during the course of this trial that may be related to the determinations and conclusions reached by FTB regarding Mr. Hyatt's residency and tax assessments, you are not permitted to make any

 

determinations regarding Mr. Hyatt's residency such as when he became or did not become a resident of Nevada.

When jury instructions were given, this instruction was intended to be part of the jury instructions, but somehow the instruction was altered and a different version of this instruction was read as Jury Instruction 24. To correct the error, the district court read a revised Jury Instruction 24:

You have heard evidence during the course of this trial that may be related to the determinations and conclusions reached by FTB regarding Mr. Hyatt's residency and tax assessments. You are not permitted to make any determinations regarding Mr. Hyatt's residency, such as when he became or did not become a resident of Nevada. Likewise, you are not permitted to make any determinations related to the propriety of the tax assessments issued by FTB against Mr. Hyatt, including but not limited to, the correctness or incorrectness of the amount of taxes assessed, or the determinations of FTB to assess Mr. Hyatt penalties and/or interest on those tax assessments.

The residency and tax assessment determinations, and all factual and legal issues related thereto, are the subject matter of a separate administrative process between Mr. Hyatt and FTB in the State of California and will be resolved in that administrative process. You are not to concern yourself with those issues.

Counsel for the FTB read and presented argument from the inaccurate Jury Instruction No. 24. To the extent FTB's counsel's arguments cited and relied on statements that are not contained in the correct Jury Instruction No. 24, they are stricken and you must disregard them. You are not to consider the stricken statements and arguments in your deliberations. *There is nothing in the correct Jury Instruction No. 24 that*

Supreme Court
OF
Nevada

(O) 1947A

*would prevent you during your deliberations from considering the appropriateness or correctness of the analysis conducted by the FTB employees in reaching its residency determination and conclusion. There is nothing in Jury Instruction No. 24 that would prevent Malcolm Jumulet from rendering an opinion about the appropriateness or correctness of the analysis conducted by FTB employees in reaching its residency determinations and conclusions.*

(Emphasis added.) Based on the italicized language, FTB argues that the district court not only allowed, but invited the jury to consider whether the FTB's audit conclusions were correct.

Jury Instruction 24 violated the jurisdictional limit that the district court imposed on this case. The instruction specifically allowed the jury to consider the "appropriateness or correctness of the analysis conducted by the FTB employees in reaching its residency determination and conclusion." As a result, the district court abused its discretion in giving this jury instruction. *Allstate Ins. Co.*, 125 Nev. at 319, 212 P.3d at 331.

### *Exclusion of evidence to rebut adverse inference*

FTB also challenges the district court's exclusion of evidence that it sought to introduce in an effort to rebut an adverse inference sanction for spoliation of evidence. The evidentiary spoliation arose when FTB changed its email server in 1999, and it subsequently destroyed backup tapes from the old server. Because the server change occurred during the pendency of this litigation, FTB sent multiple emails to its employees, before the change, requesting that they print or otherwise save any emails related to Hyatt's case. Backup tapes containing several weeks' worth of emails were made from the old system to be used in the event that FTB needed to recover the old system. FTB, at some point,

SUPREME COURT
OF
NEVADA

(0) 1947A

overwrote these tapes, however, and Hyatt eventually discovered the change in email servers and requested discovery of the backup tapes, which had already been deleted. Because FTB had deleted the backup tapes, Hyatt filed a pretrial motion requesting sanctions against FTB. The district court ruled in Hyatt's favor and determined that it would give an adverse inference jury instruction. An adverse inference allows, but does not require, the jury to infer that evidence negligently destroyed by a party would have been harmful to that party. *See, e.g., Bass-Davis v. Davis*, 122 Nev. 442, 446, 452, 134 P.3d 103, 106, 109 (2006).

At trial, FTB sought to introduce evidence explaining the steps it had taken to preserve any relevant emails before the server change. Hyatt challenged this evidence, arguing that it was merely an attempt to reargue the evidence spoliation. The district court agreed with Hyatt and excluded the evidence. FTB does not challenge the jury instruction, but it does challenge the district court's exclusion of evidence that it sought to present at trial to rebut the adverse inference.

On this point, FTB argues that it was entitled to rebut the adverse inference, and therefore, the district court abused its discretion in excluding the rebuttal evidence. Hyatt counters that it is not proper evidence because in order to rebut the inference FTB had to show that the destroyed evidence was not harmful and FTB's excluded evidence did not demonstrate that the destroyed emails did not contain anything harmful.

This court has recognized that a district court may impose a rebuttable presumption, under NRS 47.250(3), when evidence was willfully destroyed, or the court may impose a permissible adverse inference when the evidence was negligently destroyed. *Bass-Davis*, 122 Nev. at 447-48, 134 P.3d at 106-07. Under a rebuttable presumption, the

SUPREME COURT
OF
NEVADA

(O) 1947A

54

burden shifts to the spoliating party to rebut the presumption by showing that the evidence that was destroyed was not unfavorable. 122 Nev. at 448, 134 P.3d at 107. If the party fails to rebut the presumption, then the jury or district court may presume that the evidence was adverse to the party that destroyed the evidence. *Id.* A lesser adverse inference, that does not shift the burden of proof, is permissible. *Id.* at 449, 134 P.3d at 107. The lesser inference merely allows the fact-finder to determine, based on other evidence, that a fact exists. *Id.*

In the present case, the district court concluded that FTB's conduct was negligent, not willful, and therefore the lesser adverse inference applied, and the burden did not shift to FTB. But the district court nonetheless excluded the proposed evidence that FTB sought to admit to rebut the adverse inference. The district court should have permitted FTB to explain the steps that it took to collect the relevant emails in an effort to demonstrate that none of the destroyed information contained in the emails was damaging to FTB. Because the district court did not allow FTB to explain the steps taken, we are not persuaded by Hyatt's contention that FTB's evidence was actually only an attempt to reargue the spoliation issue. To the contrary, FTB could use the proposed evidence related to its efforts to collect all relevant emails to explain why nothing harmful was destroyed. Therefore, we conclude that the district court abused its discretion in excluding the evidence, and we reverse the district court's ruling in this regard.

### Other evidentiary errors

FTB additionally challenges the district court's exclusion of evidence regarding Hyatt's loss of his patent through a legal challenge to the validity of his patent and his being audited for his federal taxes by the IRS, both of which occurred during the relevant period associated with

55

Hyatt's IIED claim. Hyatt asserts that the district court properly excluded the evidence because it was more prejudicial than probative.

Under NRS 48.035(1), "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Hyatt argues that this provides a basis for the district court's exclusion of this evidence. We conclude, however, that the district court abused its discretion in excluding the evidence of Hyatt's patent loss and federal tax audit on this basis. Although the evidence may be prejudicial, it is doubtful that it is *unfairly* prejudicial as required under the statute. And in any event, the probative value of this evidence as to Hyatt's IIED claim, in particular in regard to damages caused by FTB as opposed to other events in his life, is more probative than unfairly prejudicial. Accordingly, the district court abused its discretion in excluding this evidence.

*Evidentiary and jury instruction errors do not warrant reversal*

Because the district court abused its discretion in making the evidentiary and jury instruction rulings outlined above, we must determine whether these errors warrant reversal and remand for a new trial on the IIED claim, or whether the errors were harmless such that the judgment on the IIED claim should be upheld. *See Cook v. Sunrise Hosp. & Med. Ctr., LLC,* 124 Nev. 997, 1006, 194 P.3d 1214, 1219 (2008) (holding that when there is error in a jury instruction "prejudice must be established in order to reverse a district court judgment," which can be done by "showing that, but for the error, a different result might have been reached"); *El Cortez Hotel, Inc. v. Coburn,* 87 Nev. 209, 213, 484 P.2d 1089, 1091 (1971) (stating that an evidentiary error must be prejudicial in order to warrant reversal and remand). Based on the sliding-scale

SUPREME COURT
OF
NEVADA

(O) 1947A

approach we adopt today, the increased severity of a defendant's conduct will require less in the way of proof of emotional distress to establish an IIED claim. As noted earlier, the facts of this case are at the more extreme end of the scale. Thus, we conclude that FTB has failed to show that, but for the trial errors, a different result might have been reached, at least as to liability. On the issue of damages, we conclude that a different result would have been reached but for the trial errors. However, as with our determination on FTB's liability on Hyatt's IIED claim, we conclude that the evidence in connection with the severe treatment experienced by Hyatt supports a damages award up to the NRS 41.035(1) $50,000 damages cap. We will not compel the parties to incur the expense of a new trial. *Cf. Newman v. Kane*, 9 Nev. 234, 236 (1874) (holding that "[w]hen . . . the court has all the facts before it upon which it can render the proper judgment, it will not impose upon the parties the expense of a new trial"). We therefore reverse the award of damages on the IIED claim and remand this matter to the district court with instructions to enter a damages award on Hyatt's IIED claim in the amount of $50,000. *Cf. Nev. Indep. Broad. Corp. v. Allen*, 99 Nev. 404, 419, 664 P.2d 337, 347 (1983) (concluding that jury award of damages was excessive as a matter of law and reducing damages to "the maximum amount that could be reasonably awarded under the[ ] circumstances"). Because this damages award on the IIED claim is the maximum allowed by NRS 41.035(1), Hyatt is not entitled to prejudgment interest.[19] *See Arnesano v. State, Dep't of Transp.*,

---

[19]As noted above, the statutory cap on damages does not apply to awards for attorney fees and costs.

SUPREME COURT
OF
NEVADA

(O) 1947A

113 Nev. 815, 822, 942 P.2d 139, 143-44 (1997), *abrogated on other grounds by Martinez v. Maruszczak*, 123 Nev. 433, 168 P.3d 720 (2007).

*Punitive damages*

The final issue that we must address in FTB's appeal is whether Hyatt can recover punitive damages from FTB. The district court allowed the issue of punitive damages to go to the jury, and the jury found in Hyatt's favor and awarded him $250 million.

Punitive damages are damages that are intended to punish a defendant's wrongful conduct rather than to compensate a plaintiff for his or her injuries. *Bongiovi v. Sullivan*, 122 Nev. 556, 580, 138 P.3d 433, 450 (2006). But "[t]he general rule is that no punitive damages are allowed against a [government entity] unless *expressly* authorized by statute." *Long v. City of Charlotte*, 293 S.E.2d 101, 114 (N.C. 1982) (emphasis added). In Nevada, NRS 41.035(1) provides that "[a]n award for damages [against a government entity] in an action sounding in tort . . . may not include any amount as exemplary or punitive." Thus, Nevada has not waived its sovereign immunity from suit for such damages.

FTB argues that it is entitled to immunity from punitive damages based on comity because, like Nevada, California law has expressly waived such damages against its government entities. California law provides full immunity from punitive damages for their government agencies. Cal. Gov't Code § 818 (West 2012). Hyatt maintains that punitive damages are available against an out-of-state

government entity, if provided for by statute, and Nevada has a statute authorizing such damages—NRS 42.005.[20]

NRS 42.005(1) provides that punitive damages may be awarded when a defendant "has been guilty of oppression, fraud or malice, express or implied." Hyatt acknowledges that punitive damages under NRS 42.005 are not applicable to a Nevada government entity based on NRS 41.035(1), but he contends that because FTB is not a Nevada government agency, the protection against punitive damages for Nevada agencies under NRS 41.035(1) does not apply, and thus, FTB comes within NRS 42.005's purview. FTB counters by citing a federal district court holding, *Georgia v. City of East Ridge, Tennessee*, 949 F. Supp. 1571, 1581 (N.D. Ga. 1996), in which the court concluded that a Tennessee government entity could not be held liable for punitive damages under Georgia state law (which applied to the case) because, even though Georgia law had a statute allowing punitive damages, Georgia did not allow such damages against government entities. Therefore, the court gave the Tennessee government entity the protection of this law. *Id.*

---

[20]Hyatt also argues that punitive damages are proper because the IRS is subject to punitive damages for conduct similar to that alleged here under the IRS code, 26 U.S.C. § 7431(c)(1)(B)(ii) (2012), which allows for punitive damages for intentional or grossly negligent disclosure of a private taxpayer's information. Thus, Hyatt maintains that it is reasonable to impose punitive damages against FTB when the federal law permits punitive damages against the IRS for similar conduct. *Id.* But as FTB points out, this argument fails because there is a statute that expressly allows punitive damages against the IRS, and such a statute does not exist here.

The broad allowance for punitive damages under NRS 42.005 does not authorize punitive damages against a government entity. Further, under comity principles, we afford FTB the protections of California immunity to the same degree as we would provide immunity to a Nevada government entity as outlined in NRS 41.035(1). Thus, Hyatt's argument that Nevada law provides for the award of punitive damages against FTB is unpersuasive. Because punitive damages would not be available against a Nevada government entity, we hold that under comity principles FTB is immune from punitive damages. We therefore reverse the portion of the district court's judgment awarding punitive damages against FTB.

*Costs*

Since we reverse Hyatt's judgments on several of his tort causes of action, we must reverse the district court's costs award and remand the costs issue for the district court to determine which party, if any, is the prevailing party based on our rulings. *See Bower v. Harrah's Laughlin, Inc.*, 125 Nev. 470, 494-95, 215 P.3d 709, 726 (2009) (stating that the reversal of costs award is required when this court reverses the underlying judgment); *Glenbrook Homeowners Ass'n v. Glenbrook Co.*, 111 Nev. 909, 922, 901 P.2d 132, 141 (1995) (upholding the district court's determination that neither party was a prevailing party because each party won some issues and lost some issues). On remand, if costs are awarded, the district court should consider the proper amount of costs to award, including allocation of costs as to each cause of action and recovery for only the successful causes of action, if possible. *Cf. Mayfield v. Koroghli*, 124 Nev. 343, 353, 184 P.3d 362, 369 (2008) (holding that the district court should apportion costs award when there are multiple defendants, unless it is "rendered impracticable by the interrelationship of

the claims"); *Bergmann v. Boyce*, 109 Nev. 670, 675-76, 856 P.2d 560, 563 (1993) (holding that the district court should apportion attorney fees between causes of action that were colorable and those that were groundless and award attorney fees for the groundless claims).

Because this issue is remanded to the district court, we also address FTB's challenges on appeal to the procedure used by the district court in awarding costs. Hyatt moved for costs after trial, which FTB opposed. FTB's opposition revolved in part around its contention that Hyatt failed to properly support his request for costs with necessary documentation as to the costs incurred. The district court assigned the costs issue to a special master. During the process, Hyatt supplemented his request for costs on more than one occasion to provide additional documentation to support his claimed costs. After approximately 15 months of discovery, the special master issued a recommendation to award Hyatt approximately $2.5 million in costs. FTB sought to challenge the special master's recommendation, but the district court concluded that FTB could not challenge the recommendation under the process used, and the court ultimately adopted the special master's recommendation.

FTB argues that Hyatt was improperly allowed to submit, under NRS 18.110, documentation to support the costs he sought after the deadline. This court has previously held that the five-day time limit established for filing a memorandum for costs is not jurisdictional because the statute specifically allows for "such further time as the court or judge may grant" to file the costs memorandum. *Eberle v. State ex rel. Nell J. Redfield Trust*, 108 Nev. 587, 590, 836 P.2d 67, 69 (1992). In *Eberle*, this court stated that even if no extension of time was granted by the district court, the fact that it favorably awarded the costs requested demonstrated

SUPREME COURT
OF
NEVADA

(O) 1947A

that it impliedly granted additional time. *Id.* The *Eberle* court ruled that this was within the district court's discretion and would not be disturbed on appeal. *Id.* Based on the *Eberle* holding, we reject FTB's contention that Hyatt was improperly allowed to supplement his costs memorandum.

FTB also contends that the district court erred when it refused to let FTB file an objection to the master's report and recommendation. The district court concluded that, under NRCP 53(e)(3), no challenge was permitted because there was a jury trial. While the district court could refer the matter to a special master, the district court erroneously determined that FTB was not entitled to file an objection to the special master's recommendation. Although this case was a jury trial, the costs issue was not placed before the jury. Therefore, NRCP 53(e)(2) applied to the costs issue, not NRCP 53(e)(3). NRCP 53(e)(2) specifically provides that "any party may serve written objections" to the master's report. Accordingly, the district court erred when it precluded FTB from filing its objections. On remand, if the district court concludes that Hyatt is still entitled to costs, the court must allow FTB to file its objections to the report before the court enters a cost award. Based on our reversal and remand of the costs award, and our ruling in this appeal, we do not address FTB's specific challenges to the costs awarded to Hyatt, as those issues should be addressed by the district court, if necessary, in the first instance.

*Hyatt's cross-appeal*

The final issues that we must resolve concern Hyatt's cross-appeal. In his cross-appeal, Hyatt challenges the district court's summary judgment ruling that prevented him from seeking economic damages as part of his recovery for his intentional tort claims.

 

As background, during the first audit, FTB sent letters to two Japanese companies with whom Hyatt had patent-licensing agreements asking the companies for specific dates when any payments were sent to Hyatt. Both companies responded to the letters and provided the requested information. In the district court, Hyatt argued that sending these letters to the Japanese companies was improper because they revealed that Hyatt was being audited by FTB and that he had disclosed the licensing agreements to FTB. Hyatt theorized that he suffered economic damages by losing millions of dollars of potential licensing revenue because he alleges that the Japanese market effectively abandoned him based on the disclosures. FTB moved the district court for summary judgment to preclude Hyatt from seeking economic loss damages, arguing that Hyatt did not have sufficient evidence to present this claim for damages to the jury. The district court agreed and granted FTB summary judgment.

Damages "cannot be based solely upon possibilities and speculative testimony." *United Exposition Serv. Co. v. State Indus. Ins. Sys.*, 109 Nev. 421, 424, 851 P.2d 423, 425 (1993). This is true regardless of "'whether the testimony comes from the mouth of a lay witness or an expert.'" *Gramanz v. T-Shirts & Souvenirs, Inc.*, 111 Nev. 478, 485, 894 P.2d 342, 347 (1995) (quoting *Advent Sys. Ltd. v. Unisys Corp.*, 925 F.2d 670, 682 (3d Cir. 1991)). When circumstantial evidence is used to prove a fact, "the circumstances must be proved, and not themselves be presumed." *Horgan v. Indart*, 41 Nev. 228, 231, 168 P. 953, 953 (1917); *see also Frantz v. Johnson*, 116 Nev. 455, 468, 999 P.2d 351, 359 (2000). A party cannot use one inference to support another inference; only the ultimate fact can be presumed based on actual proof of the other facts in

SUPREME COURT
OF
NEVADA

(0) 1947A

the chain of proof. *Horgan*, 41 Nev. at 231, 168 P. at 953. Thus, "a complete chain of circumstances must be proven, and not left to inference, from which the ultimate fact may be presumed." *Id.*

Here, Hyatt argued that as a result of FTB sending letters to the two Japanese companies inquiring about licensing payments, the companies in turn would have notified the Japanese government about FTB investigating Hyatt. Hyatt theorized that the Japanese government would then notify other Japanese businesses about Hyatt being under investigation, with the end result being that the companies would not conduct any further licensing business with Hyatt. Hyatt's evidence to support this alleged chain of events consisted of the two letters FTB sent to the two companies and the fact that the companies responded to the letters, the fact that his licensing business did not obtain any other licensing agreements after the letters were sent, and expert testimony regarding Japanese business culture that was proffered to establish this potential series of events.

Hyatt claims that the district court erroneously ruled that he had to present direct evidence to support his claim for damages, e.g., evidence that the alleged chain of events actually occurred and that other companies in fact refused to do business with Hyatt as a result. Hyatt insists that he had sufficient circumstantial evidence to support his damages, and in any case, asserts that circumstantial evidence alone is sufficient and that causation requirements are less stringent and can be met through expert testimony under the circumstances at issue here. FTB responds that the district court did not rule that direct evidence was required, but instead concluded that Hyatt's evidence was speculative and insufficient. FTB does not contest that damages can be proven through

Supreme Court
OF
Nevaoa

(O) 1947A



circumstantial evidence, but argues that Hyatt did not provide such evidence. It also argues that there is no different causation standard under the facts of this case.

The issue we must decide is whether Hyatt set forth sufficient circumstantial evidence to support his economic damages claim, or if the evidence he presented was instead either too speculative or failed to create a sufficient question of material fact as to his economic damages. To begin with, we reject Hyatt's contention that reversal is necessary because the district court improperly ruled that direct evidence was mandatory. Hyatt's limited view of the district court's ruling is unavailing.

The ultimate fact that Hyatt seeks to establish through circumstantial evidence, that the downfall of his licensing business in Japan resulted from FTB contacting the two Japanese companies, however, cannot be proven through reliance on multiple inferences—the other facts in the chain must be proven. Here, Hyatt only set forth expert testimony detailing what his experts believed would happen based on the Japanese business culture. No evidence established that any of the hypothetical steps actually occurred. Hyatt provided no proof that the two businesses that received FTB's letters contacted the Japanese government, nor did Hyatt prove that the Japanese government in turn contacted other businesses regarding the investigation of Hyatt. Therefore, Hyatt did not properly support his claim for economic damages with circumstantial evidence. *Wood v. Safeway, Inc.*, 121 Nev. 724, 731, 121 P.3d 1026, 1030-31 (2005) (recognizing that to avoid summary judgment once the movant has properly supported the summary judgment motion, the nonmoving party may not rest upon general allegations and conclusions, but must instead set forth by affidavit or otherwise specific

facts demonstrating the existence of a genuine issue of material fact for trial); *see* NRCP 56(e). Accordingly, summary judgment was proper and we affirm the district court's summary judgment on this issue.

## CONCLUSION

Discretionary-function immunity does not apply to intentional and bad-faith tort claims. But while FTB is not entitled to immunity, it is entitled to judgment as a matter of law on each of Hyatt's causes of action except for his fraud and IIED claims. As to the fraud claim, we affirm the district court's judgment in Hyatt's favor, and we conclude that the district court's evidentiary and jury instruction errors were harmless. However, we reverse the amount of damages awarded, as we have determined that FTB is entitled to NRS 41.035(1)'s $50,000 statutory cap on damages under comity principles. In regard to the IIED claim, we affirm the judgment in favor of Hyatt as to liability. We also conclude that sufficient evidence supports a damages award up to NRS 41.035(1)'s $50,000 statutory cap and thus determine that the district court should award Hyatt damages in that amount for his IIED claims. We conclude that Hyatt is not entitled to prejudgment interest on these damages awards because an award of prejudgment interest would impermissibly exceed NRS 41.035(1)'s $50,000 statutory cap. We further hold that Hyatt is precluded from recovering punitive damages against FTB. The district court's judgment is therefore affirmed in part and reversed and remanded in part. We also reverse the costs awards and remand to the district court for a new determination with respect to attorney fees and costs in light of this opinion. Finally, we affirm the district court's prior summary judgment as to Hyatt's claim for economic damages on Hyatt's cross-appeal. Given our resolution of this appeal, we do not need to address the remaining arguments raised by the parties on appeal or cross-appeal, nor

SUPREME COURT
OF
NEVADA

(O) 1947A

do we consider FTB's second request that this court take judicial notice of certain publicly available documents.

_____, J.
Hardesty

We concur:

_____, C.J.
Cherry

_____, J.
Douglas

_____, J.
Gibbons

_____, J.
Pickering

_____, J.
Parraguirre

_____, J.
Stiglich

SUPREME COURT
OF
NEVADA

(O) 1947A